UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

GRACIANO CORPORATION,

    Plaintiff,

v.

JOHN P. PICONE, INC., and
JAMES McCULLAGH CO., INC., trading/doing
business as PICONE/McCULLAGH
JOINT VENTURE, FEDERAL INSURANCE
COMPANY, and LIBERTY MUTUAL
INSURANCE COMPANY,

    Defendants.
------------------------------------------------------------X



JUDGE KEENAN

'08 CIV 6907

## COMPLAINT

Plaintiff, Graciano Corporation ("Graciano"), by and through its undersigned counsel, SCHNADER HARRISON SEGAL & LEWIS LLP, hereby files the following Complaint against Defendants, John P. Picone, Inc. (individually, "Picone") and James McCullagh Co., Inc. (individually, "McCullagh"), trading and/or doing business as Picone/McCullagh Joint Venture ("PMJV"), Federal Insurance Company ("Federal") and Liberty Mutual Insurance Company ("Liberty Mutual"):

### The Parties

1. Graciano is a Pennsylvania corporation with a principal place of business located at 209 Sigma Drive, Pittsburgh, Pennsylvania 15238-2826.

2. Upon information and belief, Picone is a New York corporation with an office and principal place of business located at 31 Garden Lane, Box 9013, Lawrence, New York 11559-9013.

3. Upon information and belief, McCullagh is a New York corporation with an office and principal place of business located at 75 E. Bethpage Road, Box 6011, Plainview, New York 11803-0611.

4. At all times relevant hereto, Picone and McCullagh had entered into an agreement to undertake a joint venture, were the sole and exclusive members of a joint venture, and otherwise traded and/or did business as a joint venture that is publicly known as PMJV. PMJV has an office and principal place of business located at 31 Garden Lane, Lawrence, New York 11559.

5. Upon information and belief, Federal is an Indiana corporation with an office and principal place of business located at 15 Mountain View Road, Warren, New Jersey 07061.

6. Upon information and belief, Liberty Mutual is an Indiana corporation with an office and principal place of business located at 175 Berkeley Street, Boston, Massachusetts 02116.

**Jurisdiction and Venue**

7. There is diversity of citizenship between Graciano and Defendants, and the amount in controversy in this action exceeds seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

8. Accordingly, this Honorable Court has subject matter jurisdiction over this action, pursuant to 28 U.S.C. §1332.

9. This action involves certain construction activities and physical upgrades (including labor and materials) to the Bronx and Manhattan Grit Chambers of the Wards Island Water Pollution Control Plant (the "Project"). Accordingly, the property that is the subject of

this action is located in this judicial district. Furthermore, a substantial part of the acts and/or omissions upon which this action is based occurred in this judicial district.

10. As such, venue for this action is proper in this judicial district, pursuant to 28 U.S.C. §1391.

## Background

11. On or about October 23, 2002, the New York City Department of Environmental Protection ("NYCDEP" or "Owner") entered into a written construction contract with PMJV for the provision of certain labor and materials on the Project.

12. On or about December 31, 2002, PMJV thereafter entered into a written subcontract with Graciano (the "Subcontract") for the provision of certain labor and materials on the Project, specifically described as concrete repair and rehabilitation, mortar and masonry grout, unit masonry, stone masonry units, masonry and stonework restoration and cleaning, metals restoration and quarry tile ("Subcontract Work").

13. The Subcontract was amended by written agreement dated June 5, 2003 (the "Subcontract Amendment").

14. In consideration for the Subcontract Work undertaken by Graciano and provided for the Project, PMJV agreed to pay Graciano the sum of eight million seventy seven thousand four hundred dollars ($8,077,400.00), calculated in accordance with various unit costs or unit prices expressly set forth in the Subcontract.

15. The Subcontract unconditionally obligated and required PMJV to pay Graciano for completed Subcontract Work, regardless of whether PMJV actually received from NYCDEP payment for the same. In particular, where payment for the Subcontract Work was promptly forthcoming from the Owner, the Subcontract provided that PMJV would pay Graciano within

ten (10) days after receipt of such payment. However, where such payment was not so forthcoming from the Owner, the Subcontract further specifically provided that PMJV nevertheless would pay Graciano <u>on demand</u>:

> GRAC[iano] will be paid according to the payment provisions of this subcontract for quantities approved by the Owner within ten days after receipt of the same by [PMJV]. If [PMJV] does not receive payment it shall pay GRAC[iano] on demand the amount due for work completed. Retainage will be withheld according to the terms of this subcontract.

16. The Subcontract also required the parties to comply with a specific schedule that had been created by PMJV for the Project (the "CPM Schedule"), and expressly provided that Graciano would be compensated by PMJV for any and all increased costs and expenses that it incurred as a result of CPM Schedule changes, delays or other modifications that were not caused or requested by Graciano itself. In particular, the Subcontract states:

> GRAC[iano] will comply with the schedule and phasing of the work of the Principal Contract. [PMJV] shall promptly notify GRAC[iano] of any changes to the scheduling and phasing of work that affect GRAC[iano] and GRAC[iano] shall be entitled to any additional costs incurred as a result of such changes.

17. The Subcontract Amendment further clarified the foregoing Subcontract language as follows:

> It is understood that the schedule and phasing plan that Graciano will be required to comply with is that identified as Baseline CPM Progress Report, dated September 2, 2002, for Wards Island WCP 103 (Graciano's work being Contract 78G portion) with a data date of September 10, 2002 and the most recent update (attached) dated 6/12/03. . . Graciano shall be entitled to recover any additional costs it incurs as result of changes to the schedule and phasing plan to the extent such costs are recoverable from the owner or other responsible party.

18. Graciano commenced its Subcontract Work on or after June 5, 2003, as directed by PMJV.

19. However, from time to time during Graciano's performance of the Subcontract, PMJV suspended, delayed, altered, redirected and/or re-sequenced Graciano's Subcontract Work

on the Project in various ways that were substantially and materially different from the CPM Schedule.

20. The foregoing material alterations and modifications to the CPM Schedule directly and proximately caused Graciano to suffer substantial harm and damages, including, but not limited to increased costs and overhead in the aggregate principal amount of at least $1,158,000.00 (the "Delay Damages").

21. PMJV has expressly acknowledged and admitted that the foregoing suspensions, delays, alterations, redirections, re-sequencing and other material alterations to the CPM Schedule were not caused, necessitated or requested by Graciano, but instead, were attributable to the Owner and/or other parties. As such, the Delay Damages are recoverable by PMJV from those parties or entities, thereby entitling Graciano to payment on demand from PMJV in accordance with the express Subcontract terms.

22. From time to time during Graciano's performance of the Subcontract Work, PMJV also revised, changed, altered the scope of the Subcontract Work and/or otherwise directed Graciano to undertake various additional work and to provide various labor and materials to the Project, in addition to those activities and materials that were contemplated by the parties in the Subcontract (the "Extra Work").

23. Appropriate change orders were issued properly, executed and otherwise approved by any and all responsible parties, including PMJV and/or NYCDEP, prior to Graciano's commencement of the Extra Work, and Graciano otherwise complied with all Subcontract requirements regarding the same.

24. Between September 9, 2003 and April 3, 2007, Graciano submitted to PMJV periodic Applications and Certificates for Payment ("Payment Applications") in accordance with the Subcontract for the Subcontract Work and the Extra Work.

25. The Subcontract Work and Extra Work that is the subject of the Payment Applications actually was provided and performed, any and all costs associated therewith actually were incurred, and materials actually were delivered and/or incorporated into Project by Graciano. Furthermore, the Subcontract Work and the Extra Work that is the subject of the Payment Applications fully satisfied all Subcontract requirements and complied with all applicable industry standards.

26. The Subcontract Work and Extra Work that is the subject of the Payment Applications was acknowledged, approved and/or accepted by PMJV, NYCDEP and/or NYCDEP's designated agent and/or representative.

27. Although PMJV paid Graciano for some of the Subcontract Work and Extra Work that is the subject of the Payment Applications, it wrongfully has failed and refused to tender payment for a substantial amount thereof. The total outstanding and overdue principal balance on the Payment Applications is $1,381,235.00.

28. In or around February 2007, Graciano made several verbal demands for payment of the foregoing amount due on the Payment Applications. On February 21, 2007, Graciano also made a written demand for the same.

29. However, PMJV wrongfully has failed and refused to tender payment to Graciano for the outstanding and overdue Payment Applications, or for the Delay Damages.

30. PMJV's substantial material breach of the above-identified express Subcontract provisions, duties and obligations relieved Graciano of any duties or obligations to continue to

perform the Subcontract Work or to otherwise render any services or provide any materials for the Project.

31. In a transparent and thinly-veiled attempt to avoid or excuse its own failure to comply with the Subcontract by paying to Graciano the outstanding balance on the Payment Applications and the Delay Damages, PMJV claimed that Graciano had abandoned the Project and its Subcontract Work. In particular, for example, by correspondence dated March 28, 2007, PMJV asserted:

> Therefore, because of the scheduling requirements mandated by the Principal Contract, if Graciano does not reman the project immediately, [PMJV] will perform your work and any costs associated with the restoration and repairs will be charged to your account. Beginning March 29, 2007, we will staff the project with adequate labor and equipment to complete the work in accordance with the CPM [Schedule].

32. However, PMJV's abandonment claim was patently false, unsupported, unjustified, and fabricated in bad faith. First and foremost, for example, despite being owed an overdue aggregate principal balance of at least $2,539,235.00, Graciano continued to perform Subcontract Work and Extra Work on the Project until at least May 23, 2007.

33. Additionally, although PMJV expressly represented in its March 28, 2007 letter that Graciano would have until March 29, 2007 to "reman" the Project before PMJV self-performed or took over the Subcontract Work, PMJV actually had begun to self-perform on the same day as its letter, i.e., March 28, 2007.

34. Furthermore, even if PMJV had any legitimate basis for terminating Graciano and/or self-performing the Subcontract Work, which it did not, PMJV breached its own Subcontract terms, which provide that before PMJV is entitled to self-perform any Subcontract Work and backcharge Graciano for the same, it must give at least three (3) days' written advance

to Graciano. PMJV never provided Graciano with written notice of actual termination, nor did it provide Graciano with even one day advance notice of its self-performance.

35. Upon information and belief, PMJV has received from NYCDEP payment for at least some of the Subcontract Work and Extra Work that is the subject of the Payment Applications, but has failed and refused to tender those amounts to Graciano. Instead, PMJV is withholding wrongfully those payments as backcharges that it claims to have incurred in connection with its bogus abandonment claims, in violation of both the Subcontract and the Lien Law of the State of New York.

## Count I
## Graciano v. PMJV
## Breach of Contract

36. Graciano incorporates by reference the foregoing paragraphs of its Complaint, as though the same were set forth fully herein.

37. Graciano has fully complied with all of its duties and obligations under the circumstances, and fully satisfied all conditions precedent to its entitlement to full recovery in this action.

38. PMJV has breached the express provisions of the Subcontract and Subcontract Amendment, *inter alia*, by failing to adhere to the CPM Schedule and failing to pay Graciano on demand for the principal balance owed for the Subcontract Work and Extra Work that is the subject of the Payment Applications and for the Delay Damages.

39. Such misconduct by PMJV directly and proximately has caused Graciano to suffer harm and damages in the principal amount of at least $2,539,235.00.

WHEREFORE, Plaintiff, Graciano Corporation demands judgment in its favor and against Defendants, John P. Picone, Inc. and James McCullagh Co., Inc., trading and/or doing

business as Picone/McCullagh Joint Venture ("PMJV") in the principal amount of $2,539,235.00, plus interest, costs of suit and such other or further relief as deemed appropriate by this Honorable Court.

### Count II
### Graciano v. PMJV
### Breach of Implied Duty of Good Faith and Fair Dealing

40. Graciano incorporates by reference the foregoing paragraphs of its Complaint, as though the same were set forth fully herein.

41. As set forth in greater detail above, the Subcontract provided PMJV with discretion, under appropriate and legitimate circumstances, to terminate the Subcontract and to self-perform the Subcontract Work.

42. The implied duty of good faith and fair dealing required PMJV to exercise that discretion fairly and legitimately, and not for the purpose of its own personal gain or depriving Graciano of its own Subcontract rights and benefits.

43. However, PMJV breached its implied duties of good faith and fair dealing, *inter alia*, by self-performing certain Subcontract Work pursuant to a false and fabricated abandonment claim that was designed to conceal, avoid and excuse its own prior material breaches of the Subcontract.

44. PMJV's breaches of its implied duties of good faith and fair dealing directly and proximately caused Graciano to suffer harm and damages, including, but not limited to lost profits on the parts or portions of the Subcontract Work that PMJV self-performed.

WHEREFORE, Plaintiff, Graciano Corporation demands judgment in its favor and against Defendants, John P. Picone, Inc. and James McCullagh Co., Inc., trading and/or doing business as Picone/McCullagh Joint Venture in an amount to be proven at trial, together with

interest, costs of suit and such other or further relief as deemed appropriate by this Honorable Court.

### Count III
### Graciano v. PMJV
### Unjust Enrichment/Breach of Implied Contract

45. Graciano incorporates by reference the foregoing paragraphs of its Complaint, as though the same were set forth fully herein.

46. PMJV received, accepted and retained the benefit of the Subcontract Work and Extra Work performed by Graciano under circumstances where PMJV was aware or should have been aware that payment, repayment, reimbursement or other compensation was expected by and owed to Graciano. PMJV would be unjustly enriched and Graciano would suffer corresponding harm and damage, if PMJV were permitted to retain such benefits without adequately compensating Graciano.

47. In the event it is determined that Graciano is not entitled under the circumstances to recovery under Count I above, of the full amount sought by it therein, then Graciano is entitled in the alternative to recover on the grounds of unjust enrichment and implied contract.

WHEREFORE, Plaintiff, Graciano Corporation demands judgment in its favor and against Defendants, John P. Picone, Inc. and James McCullagh Co., Inc., trading and/or doing business as Picone/McCullagh Joint Venture in an amount to be proven at trial, together with interest, costs of suit and such other or further relief as deemed appropriate by this Honorable Court.

## Count IV
## Graciano v. Federal and Liberty Mutual
## Breach of Payment Bond

48. Graciano incorporates by reference the foregoing paragraphs of its Complaint, as though the same were set forth fully herein.

49. Federal and Liberty Mutual are co-sureties on a certain Payment Bond dated May 23, 2002 and issued to PMJV, as principal, in the penal sum of sixty two million five hundred eighty four thousand eight hundred dollars ($62,584,800.00) for the benefit of subcontractors, laborers and materialmen, such as Graciano, (the "Payment Bond").

50. The Payment Bond requires Federal and Liberty Mutual to pay any and all sums that PMJV has failed to tender for labor and materials provided to the Project by subcontractors, such as Graciano.

51. As set forth in greater detail above, PMJV wrongfully has failed and refused to compensate Graciano for the Subcontract Work and Extra Work that is the subject of the Payment Applications, and the Delay Damages.

52. Graciano has demanded that Federal and Liberty Mutual fulfill their respective obligations under the Payment Bond, by paying all amounts due and owed by PMJV.

53. Federal and Liberty Mutual have failed and refused to tender any such payments to Graciano, which constitutes a breach of Payment Bond.

54. The foregoing breach of the Payment Bond directly and proximately has damaged and harmed Graciano, for which Federal and Liberty Mutual are jointly and severally liable.

WHEREFORE, Plaintiff, Graciano Corporation demands judgment in its favor and against defendants, Federal Insurance Company and Liberty Mutual Insurance Company, in an

amount to be proven at trial, together with interest, costs and such other or further relief as deemed appropriate by this Honorable Court.

DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.

Dated: New York, New York
      August 1, 2008

Respectfully submitted,

SCHNADER HARRISON SEGAL & LEWIS LLP

By: _____
Benjamin P. Deutsch (BD-5435)
140 Broadway, Suite 3100
New York, NY 10005-1101
Telephone: 212-973-8000
Facsimile: 212-972-8798
E-mail: bdeutsch@schnader.com

Michael G. Bock
Robert J. Williams
Fifth Avenue Place, Suite 2700
120 Fifth Avenue
Pittsburgh, PA 15222-3001
Phone: (412) 577-5200
Fax:    (412) 765-3858
E-mail: mbock@schnader.com
           rwilliams@schnader.com

*Attorneys for Plaintiff Graciano Corporation*